# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Mark Conroy and Robert Dalsin, as Trustees of the Roofers Local No. 96 Health and Welfare Fund; Chris Cronin and James Hadel, as Trustees of the Roofers and Waterproofers Research and Education Joint Trust Fund; and Robert Dalsin and Kinsey Robinson, as Trustees of the National Roofing Industry Pension Fund,<br><br>    Plaintiffs,<br><br>v.<br><br>Marianne's Roofing Company LLC, a Wisconsin limited liability company, separately and doing business as "W.J. Woodruff Roofing Contractors,"<br><br>    Defendant. | Case No. 18-cv-436 (JRT/SER)<br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

The above-captioned case comes before the undersigned on Plaintiffs' Motion for Preliminary Injunction to Compel Compliance with Audit ("Motion for Emergency Relief") [Doc. No. 4], for which Plaintiffs requested expedited relief.[1] This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1) and District of Minnesota Local Rule 72.1. (Order of Reference) [Doc. No. 10]. For the reasons stated below, the Court recommends granting the Motion for Emergency Relief.

---

[1]   Plaintiffs are the trustees of the Roofers Local No. 96 Health and Welfare Fund, the National Roofing Industry Pension Fund, and the Roofers and Waterproofers Research and Education Joint Trust Fund (collectively, the "Trust Funds"). (Compl.) [Doc. No. 1 ¶ 1].

## I.     BACKGROUND

"The Trust Funds are multi-employer, jointly-trusteed, fringe benefit plans created and maintained" under the Labor Management Relations Act and are multi-employer plans under the Employment Retirement Income Security Act of 1974 ("ERISA"). (Compl. ¶ 2). The Trust Funds "provide pension, health, and other benefits to individuals performing labor in the trades, or to the eligible dependents of such individuals." (*Id.* ¶ 7). Defendant Marianne's Roofing Company, LLC ("Marianne's Roofing"), is a Wisconsin-based limited liability company. (*Id.* ¶ 4).

Marianne's Roofing is a party to a collective bargaining agreement (the "CBA") that requires it to submit "fringe benefit contribution reports and pay the fringe benefit contributions owed for each hour worked in the immediately preceding month." (*Id.* ¶ 10); *see also* (*id.* ¶ 8); (Articles of Agreement, Ex. B at 15, Attached to Aff. of Thomas C. Atmore, "Atmore Aff.") [Doc. No. 7-1].[2] The reports and contributions are to be submitted to Wilson-McShane Corporation ("Wilson McShane"), the Trust Funds' third-party administrator, on or before the fifteenth day of the month. (Compl. ¶ 10); (Mem. of Law in Supp. of Pls.' Mot. for Emergency Relief, "Mem. in Supp.") [Doc. No. 6 at 3]; (Articles of Agreement at 15); (Aff. of James F. Wilson, "Wilson Aff.") [Doc. No. 8 ¶ 2].

Marianne's Roofing did not submit fringe benefit contribution reports and failed to pay contributions for work performed in September 2017, and each month thereafter. (Compl. ¶ 14); (Wilson Aff. ¶ 5). In January 2018, Wilson-McShane requested to audit Marianne's Roofing's books and records as permitted by the CBA. (Compl. ¶ 15); (Articles of Agreement at 15);

---

[2]     All exhibits to the Atmore Affidavit are attached in Document Number 7-1. Additionally, the Court refers to the exhibits as marked, rather than as described in the Atmore Affidavit.

2

(Wilson Aff. ¶ 7). On January 19, 2018, Plaintiffs' counsel made a written demand to Marianne's Roofing's attorney that it comply with the audit. (Letter, Ex. D, Attached to Atmore Aff.). To date, Marianne's Roofing has not responded to the demands of Wilson-McShane and Plaintiffs' counsel, and it has not complied with its audit obligations. (Compl. ¶ 15); (Wilson Aff. ¶¶ 7–8). The exact number of jobs and projects for which Marianne's Roofing owes benefits and reports cannot be determined without an audit. (Wilson Aff. ¶ 9). Plaintiffs believe that Marianne's Roofing "recently ceased active operations." (Mem. in Supp. at 2); (Atmore Aff. ¶ 8) ("Upon information and belief, [Marianne's Roofing] recently had active business operations, although [Marianne's Roofing's] declination to respond to requests for information has made it impossible to confirm the accuracy of this statement.").

In February 2018, both Wilson-McShane and Plaintiffs' counsel contacted general contractors of construction projects that used Marianne's Roofing as a subcontractor.[3] (Mem. in Supp. at 4–5); *see also* (Letters, Ex. E, Attached to Atmore Aff.); (Wilson Aff. ¶¶ 10–11). Wilson-McShane and Plaintiffs' counsel explained that Marianne's Roofing "was delinquent in reporting and paying its fringe-benefit contributions" and requested that the general contractors withhold amounts due to Marianne's Roofing so that those amounts could be "used to defray the balance of unpaid contributions" that Marianne's Roofing owes the Trust Funds. (Mem. in Supp. at 4–5); *see also* (Letters, Ex. E, Attached to Atmore Aff.); (Wilson Aff. ¶¶ 10–11). Both Wilson-McShane and Plaintiffs' counsel believe that the general contractors are withholding payments to Marianne's Roofing as requested. (Mem. in Supp. at 5); (Wilson Aff. ¶ 11).

---

[3] The record does not make clear whether Wilson-McShane and Plaintiffs' counsel each contacted the same or different general contractors.

Plaintiffs initiated this lawsuit on February 14, 2018, and completed service on February 23, 2018. (Compl.); (Summons Returned Executed) [Doc. No. 13]. Plaintiffs filed their Motion for Emergency Relief on February 26, 2018. (Mot. for Emergency Relief). Plaintiffs served Marianne's Roofing with the Motion for Emergency Relief and associated documents, as well as this Court's Order setting a briefing schedule. (Certificates of Serv.) [Doc. Nos. 9, 15]; *see also* (Order Dated Mar. 2, 2018) [Doc. No. 14] (requiring Marianne's Roofing to respond to the Motion for Emergency Relief on or before March 7, 2018). To date, Marianne's Roofing has not entered an appearance in this case or responded to the Motion for Emergency Relief. Further, no representative of Marianne's Roofing appeared at the hearing on this motion.[4] (Minute Entry Dated Mar. 12, 2018) [Doc. No. 16].

## II.   DISCUSSION

### A.   Legal Standard

When making a determination regarding whether to issue a preliminary injunction, the Court considers four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (internal citations omitted). "A court issues a preliminary injunction in a lawsuit to preserve the status quo

---

[4]   Nothing withstanding its lack of appearance, Marianne's Roofing had notice of the Motion for Emergency Relief, and therefore, the motion is properly considered a motion for preliminary injunction, rather than one for a temporary restraining order. *See* Fed. R. Civ. P. 65(a)–(b).

4

and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam).

### B. Analysis

The Court considers each of the *Dataphase* factors in turn, and concludes that a preliminary injunction should be issued.

#### 1. Irreparable Harm

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Economic loss is not considered irreparable harm if the loss can be recovered. *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 915 (8th Cir. 2015).

Here, Plaintiffs argue that Marianne's Roofing's inaction is interfering with their right under Wisconsin statutes to file mechanic's liens on the projects on which Marianne's Roofing participated. (Mem. in Supp. at 11–12); *see also* Wis. Stat. § 779.06 (describing time period in which a lien must be filed, a corresponding claim must be filed, notice requirements, and required content of the lien); *Plumber's Local 458 Holiday Vacation Fund v. Howard Immel, Inc.*, 445 N.W.2d 43, 44–45 (Wis. Ct. App. 1989) (holding that Wisconsin's construction-lien law does not preempt ERISA and permits the collection of benefit contributions). The Court agrees.

Because Marianne's Roofing's failed to submit the required reports and accounting, and to pay benefits, it is depriving Plaintiffs their right to file mechanic's liens in two ways. First, Plaintiffs cannot file a mechanic's lien unless it knows how much Marianne's Roofing owes the Trust Funds. *See* Wis. Stat. § 779.06(3) (stating that the claim for a lien must include, among

other requirements, "a statement of the amount claimed"). Without Marianne's Roofing's reports and accounting, Plaintiffs do not know how much is owed for each project. (Mem. in Supp. at 11). Second, a mechanic's lien must be filed within six months of the last date that "the lien claimant performed, furnished, or procured the last labor, services, materials, plans, or specifications." Wis. Stat. § 779.06(1). Because Plaintiffs believe that Marianne's Roofing last performed work in September 2017, they must file their liens in March 2018. (Mem. in Supp. at 11). If Marianne's Roofing is permitted to continue to ignore its obligations under ERISA and the CBA, Plaintiffs will—through no fault of their own—not be able to file mechanic's liens that include the amount owed with the prescribed six-month time period. *See* Wis. Stat. § 779.06. Therefore, Marianne's Roofing's inaction will cause Plaintiffs irreparable harm.

Additionally, Plaintiffs argue that mechanic's liens "may be the only avenue of recovery for the Trust Funds" because Marianne's Roofing appears to have ceased operations. (Mem. in Supp. at 11–12). The record does not demonstrate that Marianne's Roofing ceased operations, nor does it demonstrate that mechanic's liens are the sole method of recovery. *See, e.g.*, (Atmore Aff. ¶ 8) ("Upon information and belief, [Marianne's Roofing] recently had active business operations, although [Marianne's Roofing's] declination to respond to requests for information has made it impossible to confirm the accuracy of this statement."). These shortcomings, however, are largely the result of Marianne's Roofing's refusal to pay benefits, submit the required reports to Wilson-McShane, participate in this litigation in general, and respond to this motion in particular. Plaintiffs have no way to confirm whether Marianne's Roofing is still in business. Additionally, Plaintiffs' representatives have asked general contractors to withhold payments of Marianne's Roofing so that, in the event mechanic's liens are filed, the general

contractors pay the Trust Funds directly. *See, e.g.*, (Letters, Ex. E, Attached to Atmore Aff.) (Plaintiffs' counsel's letters to general contractors); (Wilson Aff. ¶¶ 10–11).

Courts have considered defendant's precarious financial situation in their analysis of irreparable harm. *Mamula v. Satralloy, Inc.*, 578 F. Supp. 563, 576 (S.D. Ohio 1983) ("[I]rreparable harm to the plaintiffs exists in this case as a result of the type of injury involved coupled with the defendant's admittedly precarious financial condition."); *Cent. States, Se. & Sw. Areas Pension Fund v. Admiral Merchs. Motor Freight, Inc.*, 511 F. Supp. 38, 43 (D. Minn. 1980) (Alsop, J.) (finding that defendants "are in precarious financial condition" and therefore, "it is possible that defendants would be unable to satisfy any judgment ultimately rendered by the court"), *aff'd* 642 F.2d 1122 (8th Cir. 1981) (per curiam). The record suggests Marianne's Roofing is in a "precarious financial situation" based on its lack of response to Plaintiffs, Wilson-McShane, and this Court, and based on its nonpayment of fringe benefits. Because Plaintiffs may be unable to recover in the absence of mechanic's liens, the Court concludes Plaintiffs will suffer irreparable harm if the preliminary injunction is not issued.[5] *See Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 426 (8th Cir. 1996) ("The threat of **unrecoverable** economic loss . . . does qualify as irreparable harm." (emphasis added)).

### 2. Balance Between the Harms

The balance of harms favors granting the preliminary injunction. Granting a preliminary injunction would require Marianne's Roofing to follow the law and the CBA, which it is already required to do. Therefore, there is no harm to Marianne's Roofing by imposing this requirement.

---

[5] Although not argued in Plaintiffs' memorandum, non-payment of fringe benefits has and will continue to cause employees to lose their health care coverage. (Wilson Aff. ¶ 6). This fact also demonstrates irreparable harm and therefore weighs in favor of granting the preliminary injunction.

### 3. Likelihood of Success on the Merits

Plaintiffs allege that Marianne's Roofing violated ERISA and the CBA and that injunctive relief is appropriate. (Mem. in Supp. at 7–9). Therefore, they argue they are likely to succeed on the merits. (*Id.*).

ERISA requires that employers maintain records regarding benefits due, and the CBA requires Marianne's Roofing to submit payments and reports by the fifteenth of each month for the preceding month and to comply with audits. 29 U.S.C. § 1059(a)(1); (Articles of Agreement at 15); *see also* 29 U.S.C. § 1145 (requiring employers obligated to make contributions to do so "in accordance with the terms and conditions of such plan or such agreement"). ERISA permits Plaintiffs as trustees to obtain equitable relief to enforce ERISA or the CBA. 29 U.S.C. § 1132(a)(3)(B). Based on the record before the Court and the absence of objection or other participation from Marianne's Roofing, the Court concludes Plaintiffs are likely to succeed on the merits of this case.

### 4. Public Interest

The Court finds that there is a public interest in enforcing collective bargaining agreements. *Twin City Pipe Trades Serv. Ass'n, Inc. v. MSES, LLC*, No. 13-cv-2554 (DSD/FLN), 2014 WL 7020483, *2 (D. Minn. Dec. 11, 2014) (Doty, J.).

### 5. Conclusion

Because all four *Dataphase* factors weigh in favor of issuing a preliminary injunction, the Court recommends Plaintiffs' Motion for Emergency Relief be granted.

### III. RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiffs' Motion for Preliminary Injunction to Compel Compliance

with Audit [Doc. No. 4] be **GRANTED** and that within three (3) days of an order adopting this Report and Recommendation, Defendant Marianne's Roofing Company, LLC ("Marianne's Roofing") must:

1. Send to the Plaintiffs' Third Party Administrator complete and accurate fringe benefit contribution reports for the months of September 2017 to the present;

2. Deliver to Mr. James Wilson at Wilson-McShane all requested books and records needed by the Third Party Administrator to complete a payroll audit of Marianne's Roofing; and

3. Otherwise cooperate with the conduct of a payroll audit by Plaintiffs' Third Party Administrator, including immediately providing such other books and records or information as the Third Party Administrator may require to complete the payroll audit.

Pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure, any order adopting this Report and Recommendation will bind Marianne's Roofing, its owner Marianne Krueger, and any other members, officers, or directors of Marianne's Roofing.

Dated: March 15, 2018

*s/Steven E. Rau*  
STEVEN E. RAU  
United States Magistrate Judge

### Notice

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a

magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**The Court amends the deadlines for objections as follows:** A party must file and serve specific written objections to this Report and Recommendation by 5:00 p.m. on March 16, 2018, and a party responding to any objections must file its response by 5:00 p.m. on March 19, 2018.